Stephen R. Basser (121590)
**BARRACK, RODOS & BACINE**
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
*sbasser@barrack.com*

Lori G. Feldman (*pro hac* to be filed)
Courtney E. Maccarone (*pro hac* to be filed)
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
*lfeldman@zlk.com*
*cmaccarone@zlk.com*

Kim E. Richman (*pro hac* to be filed)
Jaimie Mak, Of Counsel (SBN 236505)
**RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
*krichman@richmanlawgroup.com*
*jmak@richmanlawgroup.com*

*Attorneys for Plaintiff and the Proposed Class*
*(additional counsel appear on signature page)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SUSAN TRAN, on Behalf of Herself and all Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| SIOUX HONEY ASSOCIATION, COOPERATIVE, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Susan Tran ("Plaintiff"), a resident of California, individually and on behalf of others similarly situated, by and through her undersigned counsel, hereby files this Class Action Complaint for Equitable Relief and Damages, against Sioux Honey Association, Cooperative ("Sioux Honey" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a proposed consumer protection class action against Defendant Sioux Honey for injunctive relief and economic damages based on misrepresentations and omissions committed by Defendant regarding its Sue Bee Products (as defined below).

2.      Aware of the health risks and environmental damage caused by chemical-laden foods, consumers increasingly demand foods that are pure, natural, and free of contaminants or artificial chemicals.

3.      With the knowledge of such consumer preferences and intending to capitalize on them, Defendant labels its Sue Bee Products as "Pure," "100% Pure," and/or "Natural."  It further promotes and advertises its Sue Bee Products as "100% pure, all-natural American honey."

4.      These claims are false, deceptive, and misleading.  The Sue Bee Products at issue are not "Pure," "100% Pure," "Natural," or "all-natural" and instead contain glyphosate, a synthetic chemical.

5.      Glyphosate is a potent, unnatural biocide and human endocrine disruptor with detrimental health effects that are still becoming known, including the prospect of being a human carcinogen.

6.      Glyphosate was invented by Monsanto, the agrochemical and agricultural biotechnology corporation, which began marketing the biocide in 1974 under the trade name Roundup.

7.      Defendant markets and distributes the Sue Bee and Aunt Sue's line of honey products (collectively "Sue Bee Products").   Specifically, the Sue Bee

Products at issue[1] include, but are not limited to:

    a.  Sue Bee Clover Honey, labeled "Pure";

    b.  Aunt Sue's Farmers Market Clover Honey, labeled "100% Pure"; and

    c.  Aunt Sue's Raw Honey, labeled "100% Pure" and "Natural."





---

[1]    Discovery may demonstrate that additional products are within the scope of this Complaint, and Plaintiff reserves the right to add those products.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

## SUEBEE® Honey Is America's Honey!

Enjoy 100% pure American honey every day in your cooking and baking, for health and beauty, and as a healthy energy boost. By choosing Sue Bee Honey, you're supporting the American honey bee, an important part of our ecosystem and agriculture, as well as the American farmer. Sue Bee Honey is produced by a cooperative of American beekeepers, the largest honey marketing cooperative in the world.



**100% Natural**

Sue Bee Honey is 100% pure honey plus it's nature's perfect quick energy boost. It is fat free and filled with healthy antioxidants. Browse our recipes and tips and see how much honey has to offer you!



**A Natural Pairing**

The Henningsens are a farm family, and Sue Bee Honey is produced by a cooperative of family farmers. We love the Henningsens' music, and they love Sue Bee Honey.



**Promotions**

Sue Bee Honey offers exciting giveaways, contests and sweepstakes throughout the year. Don't miss your chance to win. Plus see who's won our previous promotions.



We Support the U.S.A. Honey Bee!

100% pure, all-natural American honey

8.      Defendant falsely claims that Sue Bee Products are "Pure," "100% Pure," "Natural," or "all-natural," despite the presence of the synthetic chemical glyphosate.

9.      By deceiving consumers about the nature, quality, and/or ingredients of Sue Bee Products, Defendant is able to sell a greater volume of the products, charge higher prices for the products, and take away market share from competing products, thereby increasing its own sales and profits.

10.     Consumers lack the scientific knowledge and means necessary to determine whether Sue Bee Products are in fact "Pure," "100% Pure," "Natural," or "all-natural" and to know or ascertain the true contents and quality of the products. Reasonable consumers must and do rely on Defendant to report honestly what Sue Bee Products contain and whether the ingredients are in fact "Pure," "100% Pure," "Natural," or "all-natural."

11.     Defendant intended for consumers to rely on its representations, and reasonable consumers did in fact so rely.  As a result of its false and misleading labeling and omissions of fact, Defendant was and is able to sell Sue Bee Products to the general public of California and realize sizeable profits.

12.     The sales of Sue Bee Products constitute unlawful trade practices because such sales offend public policy, and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

13.     As a direct and proximate result of Defendant's false and misleading advertising claims and marketing practices, Plaintiff and the members of the Class purchased the Sue Bee Products because they were deceived into believing that the Sue Bee Products were "Pure," "100% Pure," "Natural," or "all-natural."  As a result, Plaintiff and members of the Class have been injured in fact because the Sue Bee Products were not "Pure," "100% Pure," "Natural," or "all-natural."[2]  Instead, the Sue Bee Products contain glyphosate, a synthetic biocide with human health effects. Plaintiff and Class Members have suffered an ascertainable and out-of-pocket loss. They would not have purchased or used the products had they known the truth about the nature, quality, and/or ingredients of Sue Bee Products, and they will not continue to use them unless and until remedial action is taken.

14.     Plaintiff seeks relief in this action individually and on behalf of all

---

[2] Plaintiff is not seeking damages for any personal injuries in this Complaint; instead, this case is based on Defendant's misrepresentations and omissions regarding Sue Bee Products purchased by Plaintiff and Class Members during the Class Period, defined below.

purchasers of Sue Bee Honey for violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA"); the False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (the "FAL"); and the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL").

15.     Accordingly, Plaintiff seeks relief equal to the premium Plaintiff and Class Members paid based on Defendant's representations that the Sue Bee Products are "Pure," "100% Pure,"  "Natural," or "all-natural" while  concealing that the Sue Bee Products contain glyphosate.

## JURISDICTION AND VENUE

16.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA").  CAFA explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a state different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiff is a citizen of California, and on information and belief, defendant Sioux Honey is a citizen of Iowa.  On information and belief, the amount in controversy exceeds $5,000,000.00.

17.     This Court has personal jurisdiction over the parties in this case. Plaintiff Tran is a citizen of California and resident of San Luis Obispo County, California.  Sioux Honey purposefully avails itself of the laws of California to market Sue Bee products to consumers in California, and distributes Sue Bee Products to numerous retailers throughout California.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1).  Plaintiff purchased Sue Bee Products sold to her within this District.  Defendant has maintained and continues to maintain a Sue Bee Products production facility in Anaheim, California, located in Orange County, which is within the District and from which such products are distributed.  Substantial acts in furtherance of the alleged

improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of Sue Bee Products, occurred within this District.

## **PARTIES**

19.    At all times mentioned herein, Defendant Sioux Honey was an Iowa cooperative association headquartered in Sioux City, Iowa, and a leading marketer of honey sold through retail stores nationwide.   Defendant was and is, at all relevant times, engaged in commercial transactions throughout the state of California, including this District.

20.    Defendant manufactures and/or causes the manufacture of honey products, and markets and distributes the products in retail stores in California and throughout the United States.   Defendant makes, markets, sells, and distributes food products under various trademarks, including Sue Bee and Aunt Sue's.

21.    At all times mentioned herein, Plaintiff Tran was and is an individual consumer over the age of eighteen, a citizen of the state of California, and a resident of the county of San Luis Obispo.   Beginning in or around June 2013, Plaintiff has purchased Sue Bee Products approximately once every month, from Von's in Grover Beach, California.

22.    In deciding to make these purchases, Plaintiff saw, relied upon, and reasonably believed that the Sue Bee Products were "Pure," "100% Pure,"  "Natural," and/or "all-natural."

23.    Had Plaintiff known at the time that the Sue Bee Products contain the unnatural biocide glyphosate, she would not have purchased or continued to purchase the Sue Bee Products.

## **FACTUAL ALLEGATIONS**

24.    American consumers increasingly and consciously seek out natural and healthful food products.   Once a small niche market, natural and healthful foods are now sold by conventional retailers, and their sales continue to soar.

25.     Consumers value natural foods, including honey, for myriad health, environmental, and political reasons, including avoiding chemicals and additives, attaining health and wellness, helping the environment, and financially supporting companies that share these values.

**A.      Defendant Cultivates a "Natural" and "Pure" Brand Image for Sue Bee Products**

26.     Defendant knows that consumers seek out and wish to purchase natural foods that do not contain synthetic chemicals, and that consumers will pay more for foods that they believe to be natural or pure than they will pay for foods that they do not believe to be natural or pure.

27.      A recent, nationally representative Consumer Reports survey of 1,005 adults found that more than half of consumers usually seek out products with a "natural" food label, often in the belief that they are produced without genetically modified organisms, hormones, pesticides, or artificial ingredients.  *See* Consumer Reports National Research Center, *Natural Food Labels Survey* (2015).[3]

28.     To capture this market, Defendant markets Sue Bee as a natural brand with products that are "Pure," "100% Pure,"  "Natural," or "all-natural."

**B.      Defendant Represents Sue Bee Products as "Pure," "100% Pure," "Natural," or "all-natural"**

29.     The Sue Bee Products are uniformly advertised as being "Pure," "100% Pure"  "Natural," or "all-natural."

30.     For example, Defendant prominently labels Sue Bee Products as "Pure" "100% Pure," or "Natural."  These representations appear on the front label of the products.

31.     Should any consumer seek further information, Defendant's Sue Bee

---

[3]     *Available at* http://www.consumerreports.org/content/dam/cro/magazine-articles/2016/March/Consumer_Reports_Natural_Food_Labels_Survey_2015.pdf (last visited January 20, 2017).

website represents Sue Bee Products as "100% pure, all-natural American honey," "100% Natural," and "100% Pure."  *See* http://suebee.com/, last visited January 19, 2017.

32.     Upon information and belief, Defendant has profited enormously from its falsely marketed products and its carefully orchestrated label and image.

33.     Representing that a product is "Pure," "100% Pure," "Natural," and "all-natural" despite the presence of the synthetic chemical glyphosate is a false statement of fact.

34.     Consumers reasonably believe that a product represented as "Pure," "100% Pure," "Natural," or "all-natural" does not contain synthetic chemicals.

35.     Consumers reasonably believe that a product represented as "Pure," "100% Pure," "Natural," or "all-natural" does not contain a potent biocide.

36.     In 2015, the Consumer Report National Research Center conducted a nationally representative phone survey to assess consumer opinion regarding food labeling.  *See* Consumer Reports National Research Center, *supra*.

37.     Sixty-three percent of all respondents in the Consumer Reports survey said that a "natural" label on packaged and processed foods means that "no toxic pesticides were used." *Id.*

38.     Defendant knows and intends that when consumers see the product labels, its website, or advertisements promising the product is "Pure," "100% Pure," "Natural," or "all-natural," consumers will understand that to mean that, at the very least, that Sue Bee Products do not contain synthetic chemicals.

39.     Consumers reasonably expect that if a product contains a synthetic biocide, the product will not be labeled as "Pure," "100% Pure," "Natural" or "all-natural."

**C.     Glyphosate Is Not Natural or Pure**

40.     Defendant's representations that Sue Bee Products are "Pure," "100% Pure,"  "Natural, or "all-natural" are false.  In fact, quantitative testing revealed that

Sue Bee Products contain glyphosate.

41.     Tests conducted by an independent laboratory have confirmed the findings by the Food and Drug Administration ("FDA"), which have revealed the presence of glyphosate in Defendant's Sue Bee Products.  *See* FDA email dated January 8, 2016 (revealing the presence of glyphosate in Sue Bee honey at levels of 41 parts per billion), *available at* https://www.usrtk.org/wp-content/uploads/2016/09/FDA1.pdf (last visited January 20, 2017).

42.     Sue Bee Products thus are not "Pure," "100% Pure," "Natural," or "all-natural," and labeling or advertising the products as such is misleading and deceptive.

43.     No serious contention can be made that products containing glyphosate, which often goes by the trade name "Roundup," is "Pure," "100% Pure," "Natural," or "all-natural."

44.     On information and belief, glyphosate is, by volume, the world's most widely produced herbicide.

45.     Glyphosate was engineered by the agrochemical and agricultural biotechnology corporation Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup, after DDT was banned.[4]

46.     By the late 1990s, use of Roundup had surged as a result of Monsanto's strategy of genetically engineering seeds to grow food crops that could tolerate high doses of the herbicide.  Monsanto's marketing strategy promised farmers that the introduction of these genetically engineered seeds would enable farmers to more easily control weeds on their crops.[5]

47.     Between 1996 and 2011, herbicide use in the United States *increased* by 527 million pounds, despite Monsanto's claims that genetically modified crop would *reduce* pesticide and herbicide use.[6]  Additionally, evidence continues to support the

---

[4]     *See* https://www.organicconsumers.org/news/monsantos-roundup-enough-make-you-sick (last visited January 20, 2017).

[5]     *See id.*

[6]     *See id.*

fact that genetic modification has not accelerated crop yields in the United States and Canada.[7]

48.     In 2015, the International Agency for Research on Cancer (IARC), a research arm of the World Health Organization, declared glyphosate a category 2A "probable" human carcinogen.   A summary of the study underlying this declaration was published in The Lancet Oncology, Vol. 16, No. 5 (May 2015).[8]   The IARC study noted such carcinogenic risk factors as DNA damage to human cells resulting from exposure to glyphosate.[9]

49.     Glyphosate has also been previously found to be a suspected human endocrine disruptor, with estrogenic effects even at extremely low concentrations.[10]

50.     In November 2015, the European Food Safety Agency published conclusions suggesting that the combined use of glyphosate with other chemicals posed greater potential health risks than when glyphosate is used alone.

51.     In light of those conclusions, in April 2016, following a review of products containing glyphosate and tallowamine, a synthetic substance that enhances the activity of glyphosate, France's health and safety agency announced its intention to ban weed-killers that combine the two chemicals.[11]

52.     Glyphosate, as a biocide, functions by disrupting the shikimate

[7]     *See* "Doubts About the Promised Bounty of Genetically Modified Crops" New York Times, October 29, 2016, *available at* http://www.nytimes.com/2016/10/30/business/gmo-promise-falls-short.html (last visited January 20, 2017).

[8]     *Available at* http://www.thelancet.com/journals/lanonc/article/PIIS1470-2045%2815%2970134-8/abstract (last visited January 20, 2016).

[9]     *See id.*

[10]    *See* Thongprakaisang, S. *et al.*, "Glyphosate induces human breast cancer cells growth via estrogen receptors," 59 *Food & Chem. Toxicol.* 129 (June 2013), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/23756170 (last visited Sept. 20, 2016); *see also, e.g.*, Gasnier, C. *et al.*, "Glyphosate-based herbicides are toxic and endocrine disruptors in human cell lines," 262(3) *Toxicology* 184 (Aug. 21, 2009), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/19539684 (last visited January 20, 2017).

[11]    *See* "France to Ban Some Glyphosate Weedkillers Amid Health Concerns," Reuters, Apr. 8, 2016, *available at* http://www.reuters.com/article/us-france-glyphosate-idUSKCN0X512S (last visited January 20, 2017).

pathway.[12]   Although humans themselves do not have a shikimate pathway, the shikimate pathway is present in bacteria, including bacteria that inhabit the human gut and are essential to proper immune functioning.   As a result, glyphosate is suspected to disrupt human immune function.

53.   Studies examining low doses of glyphosate-based biocides at levels that are generally considered "safe" for humans show that these compounds can nevertheless cause liver and kidney damage.[13]

54.   Glyphosate is derived from the amino acid glycine. To create glyphosate, one of the hydrogen atoms in glycine is artificially replaced with a phosphonomethyl group.

55.   Glyphosate is a synthetic substance, which a reasonable consumer would not expect to be found in a product labeled or advertised as "Pure, "100% Pure," "Natural," or "all-natural."

**D.   Sue Bee Product Labels Are Misleading and Omit Material Facts**

56.   Defendant's conduct in labeling or representing Sue Bee Products as

---

[12]   *See, e.g.*, Heike, H. & N. Amrhein, "The Site of the Inhibition of the Shikimate Pathway by Glyphosate," *Plant Physiol.* 66:823 (1980), *available at* http://www.plantphysiol.org/content/66/5/823.full.pdf (last visited January 20, 2017); *see also* http://www.glyphosate.eu/glyphosate-mechanism-action (last visited January 20, 2017).

[13]   Myers, J., *et al.*, "Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement," *Environ. Health* 2016 15:9, *available at* https://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0 (last visited January 20, 2017); *see also* Seralini, G.E., et al, "Republished study: long-term toxicity of a Roundup herbicide and a Roundup-tolerant genetically modified maize," *Environ. Sci. Europe* 2014;26:14, *available at* http://enveurope.springeropen.com/articles/10.1186/s12302-014-0014-5 (last visited January 20, 2017); Benedetti, A.L., "The effects of sub-chronic exposure of Wistar rats to the herbicide Glyphosate-Biocarb, *Toxicol. Lett.* 2004;153(2):227–232, *available at* http://www.ncbi.nlm.nih.gov/pubmed/15451553 (last visited January 20, 2017); Larsen, K., *et al.*, "Effects of Sublethal Exposure to a Glyphosate-Based Herbicide Formulation on Metabolic Activities of Different Xenobiotic-Metabolizing Enzymes in Rats," *Int. J. Toxicol.* 2014, *available at* http://www.ncbi.nlm.nih.gov/pubmed/24985121 (last visited January 20, 2017); Mesnage R., *et al.*, "Transcriptome profile analysis reflects rat liver and kidney damage following chronic ultra-low dose Roundup exposure," *Environ. Health* 2015;14:70, *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4549093/ (last visited January 20, 2017).

"Pure," "100% Pure,"   "Natural," or "all-natural" deceived and/or was likely to deceive the public.

57.     Plaintiff and consumers were deceived into believing that Sue Bee Products are "Pure" or "100% Pure" and that there is nothing in the products other than honey.

58.     Plaintiff and consumers were deceived into believing that Sue Bee Products are "Natural" or "all-natural" and that nothing in the products was not natural.

59.     Instead, the Sue Bee Products contain glyphosate, a synthetic chemical and unnatural biocide.

60.     Consumers cannot discover the true nature of Sue Bee Products from reading the label.  Consumers could not discover the true nature of the products even by visiting the Sue Bee website, which makes no mention of glyphosate.  Discovery of the true nature of the Sue Bee Products requires knowledge of chemistry and access to laboratory testing that is not available to the average reasonable consumer.

61.     Defendant deceptively and misleadingly misrepresents and conceals material facts about Sue Bee Products, namely, that Sue Bee Products are not "Pure" or "100% Pure," because, in fact, the products contain glyphosate; and Sue Bee Products are not what a reasonable consumer would consider "Pure" or "100% Pure," because the products contain glyphosate.

62.     Defendant deceptively and misleadingly misrepresents and conceals material facts about Sue Bee Products, namely, that Sue Bee Products are not "Natural" or "all-natural" because, in fact, the products contain glyphosate; and Sue Bee Products are not what a reasonable consumer would consider "Natural," or "all-natural" because the products contain glyphosate.

63.     Plaintiff, and the members of the Class, are not at fault for failing to discover Defendant's wrongs earlier and had no actual or presumptive knowledge of facts sufficient to put them on notice.

64.     The production process Defendant uses for Sue Bee Products is known only to Defendant and its suppliers.  Defendant has not disclosed such information to Plaintiff or the Class.

65.     Testing reveals the presence of glyphosate in Sue Bee Products, but only Defendant knows the methods by which its honey is produced and processed, or what would account for the presence of glyphosate in Sue Bee Products. Defendant's concealment tolls the applicable statute of limitations.

66.     To this day, Defendant continues to conceal and suppress the true nature, identity, source, and method of production of Sue Bee Products.

**E.     Defendant Knew or Should Have Known That Its Representations Were False**

67.     Defendant holds itself out to the public as a trusted expert in the production of honey.

68.     Defendant knew what representations it made on the labels of Sue Bee Products. It also knew how the products were produced and processed, and that they contain glyphosate, a synthetic chemical and biocide.

69.     Defendant thus knew all the facts demonstrating that Sue Bee Products were mislabeled and falsely advertised.

**F.     Defendant Intends for Consumers to Rely on Its Misrepresentations**

70.     Defendant made the false, misleading, and deceptive representations and omissions intending for Plaintiff and Class Members to rely upon these representations and omissions in purchasing Sue Bee Products.

71.     In making the false, misleading, and deceptive representations and omissions at issue, Defendant knew and intended that consumers would purchase Sue Bee Products when consumers would otherwise purchase a competing product.

72.     Consumers are willing to pay more for a product represented to be "Pure," "100% Pure," "Natural," or "all-natural" and they expect that product to be free of synthetic chemicals, including biocides such as glyphosate.

73.   In making the false, misleading, and deceptive representations and omissions at issue, Defendant also knew and intended that consumers would pay more for "Pure" or "100% Pure" products that are free of contaminants than consumers would pay for products that are not "Pure," "100% Pure," "Natural," or "all-natural," furthering Defendant's private interest of increasing sales of its products.

74.   Similarly, independent surveys confirm that consumers will purchase more "Natural" products than conventional products, and will pay more for "Natural" products.

**G.   Consumers Reasonably Rely on Defendant's False and Misleading Representations**

75.   Consumers frequently rely on label representations and information in making purchase decisions, especially when purchasing food.

76.   When Plaintiff and Class Members purchased Sue Bee Products, the Products were labeled and/or marketed as "Pure," "100% Pure," "Natural," or "all-natural," despite the presence of the synthetic chemical, glyphosate.

77.   These misrepresentations and omissions were uniform and were communicated to Plaintiff and every other member of the Class at every point of purchase and consumption.

78.   Plaintiff and Class Members were among the intended recipients of Defendant's deceptive representations and omissions.

79.   Plaintiff and Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

80.   Defendant's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiff and Class Members, reasonable consumers, and the general public.

81.   Defendant's misleading affirmative statements further obscured what it failed to disclose.   Thus, reliance upon Defendant's misleading and deceptive

1  representations and omissions may be presumed.

2       82.     Defendant made the deceptive representations and omissions with the

3  intent to induce Plaintiff and Class Members to purchase Sue Bee Products.

4  Plaintiff's and Class Members' reliance upon such misrepresentations and omissions

5  may be presumed.

6       83.     Defendant's deceptive representations and omissions are material in that

7  a reasonable person would attach importance to such information and would be

8  induced to act upon such information in making purchase decisions.  Thus, Plaintiff's

9  and the Class Members' reliance upon such representations and omissions may be

10  presumed as a matter of law; the representations and omissions were material; and a

11  nexus exists between Defendant's conduct, on the one hand, and Plaintiff's and the

12  Class Members' decisions to purchase Sue Bee Products at a certain price, on the

13  other hand.

14  **H.      Defendant's Conduct and Plaintiff's and the Class Members' Injury**

15       84.     As an immediate, direct, and proximate result of Defendant's false,

16  misleading, and deceptive representations and omissions, Defendant injured Plaintiff

17  and Class Members in that they:

18       a.     paid a sum of money for a product that was falsely represented;

19       b.     paid more for a product that was falsely represented than they would

20  have paid had the product not been falsely represented;

21       c.     were deprived the benefit of the bargain because the Sue Bee Products

22  they purchased was different from what Defendant promised;

23       d.     were deprived the benefit of the bargain because the Sue Bee Products

24  they purchased had less value than what was represented;

25       e.     did not receive a product that measured up to their expectations as

26  created by Defendant;

27       f.     ingested (or caused their children to ingest) a product that included a

28  substance they did not reasonably expect or consent to;

g.      ingested (or caused their children to ingest) a product that included a synthetic chemical that poses potential health risks;

h.      ingested (or caused their children to ingest) a product that was of a lower quality than what Defendant promised;

i.      were denied the benefit of knowing what they ingested (or caused their children to ingest);

j.      were denied the benefit of supporting an industry that sells natural products and contributes to environmental sustainability; and/or

k.      were denied the benefit of the beneficial properties of the "Natural" and "Pure," "100% Pure," or "all-natural" honey products promised.

85.     Had Defendant not made the false, misleading, and deceptive representations and omissions Plaintiff and Class Members would not have been injured as listed above.   Accordingly, Plaintiff and Class Members have suffered "injury in fact" as a result of Defendant's wrongful conduct.

86.     Plaintiff and Class Members all paid money for Sue Bee Products, but did not obtain the full value of the advertised products due to Defendant's misrepresentations and omissions.   Plaintiff and Class Members purchased, purchased more of, or paid more for, Sue Bee Products than they would have had they known the truth about the products.  Accordingly, Plaintiff and Class Members have suffered "injury in fact" and lost money or property as a result of Defendant's wrongful conduct.

**I.      Defendant Benefited from Its Misleading Representations and Omissions**

87.     As the intended, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant has been unjustly enriched through more sales of Sue Bee Products and higher profits at the expense of Plaintiff and Class Members.   As a direct and proximate result of its deception, Defendant also unfairly obtained other benefits, including the higher value associated with a "natural" brand, redirecting sales to it and away from its

competitors, and increased sales of its other products.

88.    Plaintiff, and all other similarly situated consumers, did not bargain for products that contain a synthetic chemical, glyphosate, in exchange for their paymentof the purchase price.

89.    Upon information and belief, Defendant has failed to remedy the problem with Sue Bee Products, thus causing future harm to consumers.

90.    Plaintiff would continue to purchase Sue Bee Products again in the future if the products were reformulated so that the label was truthful and the products did not contain glyphosate.

91.    Defendant has failed to provide adequate relief to Plaintiff and the Class Members as of the date of filing this Complaint.

92.    Plaintiff contends that Sue Bee Products were and are sold pursuant to unfair and unconscionable trade practices because the sale of the products offends public policy and is immoral, unethical, oppressive, unscrupulous, and caused substantial economic injuries to Plaintiff and Class Members.

93.    Reasonable consumers do not expect Sue Bee Products advertised as "Pure," "100% Pure," "Natural," or "all-natural" to contain a synthetic chemical such as glyphosate.  Defendant's statements and other representations convey a series of express and implied claims and/or omissions which it knows are material to the reasonable consumer in making a purchasing decision, and which it intended for consumers to rely upon when choosing to purchase Sue Bee Products.

94.    In labeling Sue Bee Products as "Pure," "100% Pure," "Natural," or "all-natural," Defendant misrepresented the nature, quality, and/or ingredients of Sue Bee Products, which was and is false, misleading, and/or likely to deceive reasonable consumers.

95.    Therefore, the Sue Bee Products are not worth the purchase price that Plaintiff and Class Members paid for them, and/or are not what Plaintiff and Class Members reasonably intended to receive.

96.     Accordingly, Plaintiff seeks, individually and on behalf of all other similarly situated purchasers of Sue Bee Products during the Class Period, injunctive relief, and actual economic damages equaling the premium Plaintiff and Class Members paid for the Sue Bee Products based on Defendant's representations that the Sue Bee Products are "Pure," "100% Pure," "Natural," and "all-natural."

97.     Plaintiff also seeks declaratory relief in the form of an order declaring Defendant's conduct to be unlawful, as well as injunctive and equitable relief putting an end to Defendant's misleading and unfair business practices, including: (1) removing any statement that the Sue Bee Products are "Pure," "100% Pure," "Natural," "all-natural," or any similar claim; and/or (2) a reformulation of the Sue Bee Products so that they no longer contain glyphosate.

## **CLASS ALLEGATIONS**

98.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated California residents (the "Class"), defined as follows:

> All persons who are California residents and purchased Sue Bee
> Products within California during the period within the applicable
> statute of limitations until the date of class certification (the
> "Class Period").

99.     Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

100.    Plaintiff brings the Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

101.    Plaintiff reserves the right to amend the Class definition if further information and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

102.   All members of the Class were and are similarly affected by the deceptive advertising of Sue Bee Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

**A.   Numerosity**

103.   Based on the annual sales of Sue Bee Products and the popularity of Sue Bee Products, it is readily apparent that the number of consumers in the Class is so large as to make joinder impracticable, if not impossible.   Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**B.   Commonality**

104.   There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class Members include:

a.   Whether Defendant's practices and representations related to the marketing, labeling, and sales of Sue Bee Products were false, misleading, deceptive, unfair, and/or unlawful in any respect, thereby violating California law;

b.   Whether Defendant's conduct as set forth above economically injured Plaintiff and Class Members; and

c.   Whether Plaintiff and Class Members are entitled to injunctive relief.

**C.   Typicality**

105.   The claims asserted by Plaintiff in this action are typical of the claims of the Members of the Class, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to the Class Members. Further, there are no defenses available to Defendant that are unique to Plaintiff.

**D.      Adequacy**

106.   Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, and she has retained counsel competent and experienced in both consumer protection and class action litigation.   Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the members of the Class.   Undersigned counsel have represented consumers in a wide variety of actions where they have sought to protect consumers from false and deceptive practices.

**E.      Predominance and Superiority**

107.   The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class Member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

108.   Individual joinder of the Class Members is not practicable, and each Class Member has been damaged and is entitled to recovery as a result of the violations alleged herein.

109.   Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

110.   Plaintiff is unaware of any difficulties in managing this case that should preclude class action treatment.

**F.    Declaratory and Injunctive Relief**

111.   Certification also is appropriate under Rule 23(b)(2) because Defendant acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate the injunctive relief sought on behalf of the Class.   Further, given the large number of consumers of Sue Bee Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## CAUSES OF ACTION

## <u>COUNT I</u>

### (Unfair and Deceptive Acts and Practices against Defendant)

### On Behalf of the Class

112.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint, as if fully set forth herein verbatim.

113.   This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

114.   Plaintiff and Class Members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the falsely labeled Products for personal, family, or household purposes.   Defendant is a "person" under Cal. Civ. Code § 1761(c).

115.   Plaintiff, Class Members, and Defendant have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

116.   Sue Bee Products are "goods" under Cal. Civ. Code § 1761(a).

117.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

118.   Defendant's false representations and omissions have violated, and continue to violate the CLRA because they extend to transactions that are intended to

result, or have resulted, in the sale of goods to consumers, including Plaintiff and Class Members.  Specifically, Defendant has misrepresented the true nature, quality, and ingredients of Sue Bee Products, thereby disseminating representations or omissions that are false, deceptive, and likely to mislead a reasonable consumer, such as Plaintiff and Class Members.

119.   Defendant's conduct violates Cal. Civ. Code § 1770(a)(5), which prohibits "[r]epresenting that goods . . . have . . . characteristics [or] benefits . . . which they do not have," § 1770(a)(7), which prohibits "[r]epresenting that goods  . . . are of a particular standard, quality, or grade . . . if they are of another," and § 1770(a)(9), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  These violations caused injury to Plaintiff and Class Members.

120.   As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).  Plaintiff, via her counsel by letter dated November 22, 2016, gave Defendant notice of its violations of the law and demand for corrective action within thirty days from receipt.  Defendant has refused to comply with Plaintiff's demand to conform with the California Civil Code, thus necessitating the filing of this action.

121.   Plaintiff and Class Members seek preliminary injunctive relief, and permanent injunctive relief against Defendant's unfair and deceptive acts and conduct.

122.   Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendant from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

123.   Plaintiff and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

124.   The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and Class Members.

## COUNT II

**(Violations of California's False Advertising Law against Defendant)**

**On Behalf of the Class**

125.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint, as if fully set forth herein verbatim.

126.    This cause of action is brought pursuant to California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

127.    Such acts of Defendant, as described above, and each of them constitute unlawful, deceptive, and fraudulent business acts and practices.

128.    At all material times, Defendant engaged in a scheme of offering Sue Bee Products for sale to Plaintiff and Class Members by way of distributing to the public, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), the product packaging and labeling, and other promotional materials and offered for sale the Sue Bee Products in California.

129.    The misrepresentations and omissions by Defendant of the material facts detailed herein constitute false and misleading advertising, and therefore constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq.*

130.    Said advertisements and inducements were made within the State of California, and come within the definition of advertising contained in the FAL in that such promotional materials were intended as inducements to purchase Defendant's Sue Bee Products and are statements disseminated by Defendant to Plaintiff and Class Members.  Defendant knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive.

131.    Consumers, including Plaintiff and Class Members, necessarily and reasonably relied on these materials concerning Defendant's Sue Bee Products. Consumers, including Plaintiff and Class Members, were among the intended targets of such representations.

132.    The above acts of Defendant did and were likely to deceive reasonable

consumers, including Plaintiff and Class Members, by obfuscating the nature, quality, and/or ingredients of Sue Bee Products, in violation of the "misleading" prong of the FAL.

133.   The business practices alleged above are unlawful under the FAL, which forbids misleading and deceptive advertising.

134.   Plaintiff and the other members of the Class have suffered injury in fact and have lost money or property as a result of Defendant's violations of the FAL.

135.   As a result, Defendant has been unjustly enriched at the expense of Plaintiff and Class Members.  Plaintiff and Class Members, pursuant to California Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore to any person in interest any money paid for its falsely labeled Sue Bee Products as a result of the wrongful conduct of Defendant.

## COUNT III

### (Violation of California's Unfair Competition Law against Defendant)
### On Behalf of the Class

136.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint, as if fully set forth herein verbatim.

137.   This cause of action is brought pursuant to California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

138.   By committing the acts and practices alleged herein, Defendant has engaged in deceptive, unfair, and unlawful business practices in violation of the UCL.

139.   Plaintiff has standing to pursue this claim as she has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.  Plaintiff and Class Members also have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth above.

140.   The violation of any law constitutes an "unlawful" business practice under Cal. Bus. & Prof. Code § 17200.

141.   Defendant's misconduct, described herein, is unlawful because it violates 21 U.S.C. § 331; Cal. Civ. Code § 1709; Cal. Civ. Code § 1750 *et seq*.; Cal. Com. Code § 2313; and Cal. Bus. & Prof. Code § 17500 *et seq.*

142.   Defendant has also violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of (i) the CLRA, as alleged above, and (ii) the FAL, as alleged above.

143.   In addition, Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the Sherman Law, Cal. Health & Safety Code § 109875 *et seq*., which forbids misbranding of any food, *id.* at § 110398, such as by false or misleading labeling, *id.* at § 111730.

144.   The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." Cal. Health & Safety Code § 109995. Defendant is a "person" within the meaning of the Sherman Law.

145.   As more fully described herein, Defendant's misleading marketing, advertising, packaging, and labeling of Sue Bee Products is likely to deceive a reasonable consumer. Indeed, Plaintiff and Class Members were unquestionably deceived regarding the characteristics of Defendant's Sue Bee Products, as Defendant's marketing, advertising, packaging, and labeling of its Sue Bee Products misrepresents and/or omits the true nature, quality, and/or contents of the products.

146.   There is no benefit to consumers or competition from deceptively marketing and labeling products. Indeed, the harm to consumers and competition is substantial. Plaintiff and Class Members suffered a substantial injury due to their purchases of Sue Bee Products as alleged herein.

147.   Plaintiff and Class Members who purchased Sue Bee Products had no way of reasonably knowing that the Sue Bee Products they purchased were not as marketed, advertised, packaged, and labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

148.   Defendant's acts and omissions alleged above constitute unfair business practices under Cal. Bus. & Prof. Code § 17200 because the gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and Class Members.  Defendant's false and misleading representations and omissions also violate legislatively declared policy as they have violated numerous state and federal laws.  Moreover, the gravity of the harm to Plaintiff and Class Members resulting from Defendant's conduct outweighs Defendant's reasons, justifications, and/or motives for engaging in such deceptive acts and practices, if any.

149.   Each false and misleading representation and omission constitutes fraudulent business practices under Cal. Bus. & Prof. Code § 17200 because the representations and omissions were false.  Defendant's representations and deceptive concealment were fraudulent under the statute because they were misleading and were likely to and did deceive the reasonable consumer, including Plaintiff and Class Members.

150.   Defendant's violations continue to this day.

151.   Pursuant to California Business and Professions Code § 17203, Plaintiff and Class Members seek an order of this Court that includes, but is not limited to, an order enjoining such future conduct on the part of Defendant and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and

to restore to any person in interest any money paid for Defendant's falsely labeled Sue Bee Products as a result of the wrongful conduct of Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of herself and the proposed Class providing such relief as follows:

A.      Certification of the Class proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff as representative of the Class; and appointment of her undersigned counsel as counsel for the Class;

B.      An order declaring that Defendant is financially responsible for notifying members of the Class of the pendency of this suit in the event the putative class is certified;

C.      An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendant as a result of the unfair, misleading, and unlawful conduct alleged herein;

D.      An order declaring Defendant's conduct to be in violation of applicable law and enjoining Defendant from pursuing the unlawful acts and practices alleged herein;

E.      An order requiring Defendant to engage in corrective measures to remedy the misconduct alleged herein;

F.      Restitution, disgorgement, refund, and/or other monetary damages, together with costs, disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

G.      Restitution to the Class pursuant to California Business and Professions Code §§ 17203 and 17535;

H.      Disgorgement to the Class pursuant to California Business and Professions Code §§ 17203 and 17535;

I.      Damages, together with costs and disbursements, including reasonable

1   attorneys' fees, pursuant to the applicable statutes;

2        J.      Monetary damages, including but not limited to any compensatory,

3   incidental, or consequential damages in an amount to be determined at trial, together

4   with prejudgment interest at the maximum rate allowable by law with respect to the

5   claims alleged;

6        K.      Statutory damages in the maximum amount provided by law;

7        L.      Punitive damages in accordance with proof and in an amount consistent

8   with applicable precedent;

9        M.      Awarding to Plaintiff and Class Members reasonable attorneys' fees and

10  costs as allowed by law;

11       N.      For such other and further relief as may be deemed just, necessary, or

12  proper.

**JURY TRIAL DEMANDED**

14       Plaintiff hereby demands a trial by jury on all issues so triable.

16  Dated:  January 23, 2017                    Respectfully submitted,

17                                      _/s/ STEPHEN R. BASSER_
18                                       STEPHEN R. BASSER (121590)

19                                       **BARRACK, RODOS & BACINE**
20                                       One America Plaza
                                         600 West Broadway, Suite 900
21                                       San Diego, CA 92101
                                         Telephone: (619) 230-0800
22                                       Facsimile: (619) 230-1874
                                         _sbasser@barrack.com_

23                                       Lori G. Feldman (_pro hac_ to be filed)
                                         Courtney E. Maccarone (_pro hac_ to be
24                                       filed)
                                         **LEVI & KORSINSKY LLP**
25                                       30 Broad Street, 24th Floor
                                         New York, NY 10004
26                                       Telephone: (212) 363-7500
                                         Facsimile: (212) 363-7171
27                                       _lfeldman@zlk.com_
                                         _cmaccarone@zlk.com_
28

---

28 - CLASS ACTION COMPLAINT

Kim E. Richman (*pro hac* to be filed)
Jaimie Mak, Of Counsel (SBN 236505)
**RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, New York 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
*krichman@richmanlawgroup.com*
*jmak@richmanlawgroup.com*

John G. Emerson (*pro hac vice* to be file)
**EMERSON SCOTT, LLP**
830 Apollo Lane
Houston, TX 77058
Telephone: (281) 488-8854
Facsimile: (281) 488-8867
*jemerson@emersonfirm.com*

*Attorneys for Plaintiff and the Proposed Class*